UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| TERRA FINANCE, LLC and KOFI OSAE-KWAPONG, | : : : | Civil Action No. 16-0075 (SRC) |
| Plaintiffs, | : : : | OPINION |
| v. | : : |  |
| ACROW CORPORATION OF AMERICA, | : : |  |
| Defendant. | : : |  |

**CHESLER**, District Judge

This matter comes before the Court upon the motion of Defendant Acrow Corporation of America ("Acrow") to dismiss the complaint of Plaintiffs Terra Finance, LLC ("Terra"), and Kofi Osae-Kwapong ("Osae-Kwapong") (collectively, "Plaintiffs") and to compel arbitration, pursuant to Federal Rule of Civil Procedure 12(a)(6) and Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. (Doc. No. 8.)  Plaintiffs Terra and Osae-Kwapong oppose the motion. (Doc. No. 40.)  The Court has reviewed the parties' submissions and proceeds to rule without oral argument.  See Fed. R. Civ. P. 78(b).  For the reasons stated herein, Acrow's motion will be granted.

**I.  BACKGROUND**

Acrow is a New Jersey manufacturer of prefabricated steel bridges.  Terra is a New York corporation engaged primarily in the sale of bridge materials to customers in West Africa.  Osae-Kwapong is the president and principal of Terra.  In June 2004, Acrow and Terra entered into a representative agreement (the "2004 Agreement"), through which Acrow appointed Terra as its

exclusive sales agent for the Republic of Ghana and agreed to pay Terra a commission in exchange for the latter's sales efforts on behalf of Acrow in that country. The 2004 Agreement contained the following arbitration clause:

> Any controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration to be conducted in the United States, in accordance with the rules or conciliation and arbitration of the International Chamber of Commerce. The arbitration shall be conducted by a panel of three (3) arbitrators and their decision shall be final and binding on the parties. Judgment upon the award rendered may be entered in any court having jurisdiction or application may be made to such court for a judicial acceptance of the award and an order of enforcement, as the case may be. In the event that any such arbitration proceedings are commended, Acrow may, without prejudice to the Representative, appoint a temporary representative to solicit and secure orders for Acrow for delivery and use in the Republic of Ghana during the pendency of the arbitration proceedings.

(Doc. No. 10-4, Declaration of Kenneth C. Beehler, Esq. ("Beehler Decl."), Exhibit D, Representative Agreement ("2004 Rep. Agreement"), ¶ 9.)  Subsequently, in May 2007, Acrow and Terra renewed the 2004 Agreement under identical terms, including the arbitration clause (the "2007 Agreement").  (Doc. No. 10-6, Beehler Decl., Exhibit F, Representative Agreement ("2007 Rep. Agreement"), ¶ 9.)

In January 2016, Plaintiffs commenced this action against Acrow, asserting claims for breach of contract and unjust enrichment and seeking approximately $2.3 million in unpaid commissions. (Doc. No. 4-1, Amended Compl., ¶ 26-27, 29-32.)  Acrow now moves to dismiss Plaintiffs' complaint and compel arbitration in accordance with the arbitration clauses. Plaintiffs do not dispute the existence of the arbitration clauses or that the present matter falls within their scope. (Doc. No. 40, Memorandum of Law in Opposition to Acrow's Motion to dismiss Action and Compel Arbitration (Pl. Opp'n), at 14-16.)  They argue, however, that the clauses are unconscionable and therefore unenforceable.  Id.  Alternatively, they request that this Court

2

designate an arbitral tribunal other than the International Chamber of Commerce's International Court of Arbitration (the "ICC") to act as a substitute arbitrator, pursuant to Section 5 of the FAA, on grounds that the ICC is "unavailable." (Pl. Opp'n at 22.) The Court will first address Defendant's motion to compel arbitration. It will then address Plaintiffs' request that the Court appoint a substitute arbitrator.

## II.     DISCUSSION

### A.     Acrow's Motion to Dismiss and Compel Arbitration

The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 522 (3d Cir. 2009) (citations omitted). Through it, Congress "expressed a strong federal policy in favor of resolving disputes through arbitration." Id. "In particular, the FAA provides that . . . [arbitration clauses] shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.'" Id. (quoting 9 U.S.C. § 2). Arbitration, however, "is simply a matter of contract between the parties." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L.Ed.2d 985 (1995). A litigant cannot be forced to "submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L.Ed.2d 491 (2002). Consequently, before compelling arbitration pursuant to the FAA, a court must determine that "(1) there is an agreement to arbitrate and [that] (2) the dispute at issue falls within the scope of that agreement." Century Indem., 584 F.3d at 523 (citing Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009)).

In evaluating whether an enforceable arbitration agreement exists, a court "must initially decide whether the determination [should be] made under Fed. R. Civ. P. 12(b)(6) or 56."

3

Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117 (3d Cir. 2015). "Motions to compel arbitration are reviewed under 12(b)(6) '[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint).'" Id. (quoting Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773-74 (3d Cir. 2013)). On the other hand, if a "motion to compel arbitration is not based on a complaint 'with the requisite clarity' to establish arbitrability or [if] 'the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did,' . . . Rule 56 is proper." Sanford, 618 F. App'x at 117 (quoting Guidotti, 716 F.3d at 774).

In the instant matter, Plaintiffs' complaint clearly refers to and relies upon the 2004 and 2007 Agreements. (Amended Compl., ¶¶ 10-13.) Acrow's defense of arbitrability is undoubtedly apparent from the face of those documents, given that they contain the arbitration clauses. (2004 Rep. Agreement, ¶ 9; 2007 Rep. Agreement, ¶ 9.) However, Plaintiffs have also come forth with evidence, in the form of a sworn declaration and exhibits attached thereto, which Plaintiffs argue show that the arbitration clauses are unconscionable and therefore unenforceable. (Doc. No. 40-7, Declaration of Kofi Osae-Kwapong ("Osae-Kwapong Decl."); Doc. No. 40-19, Exhibit 12, Letter from Deputy Counsel Ulyana Bardyn, International Chamber of Commerce, to Aderemilekun A. Omojola, Esq. ("ICC Letter"). Because such evidence amounts to more than a 'mere naked assertion' that the arbitration clauses should not be binding on Plaintiffs, Rule 56 is proper. Accordingly, the Court will determine whether the arbitration clauses are enforceable under Rule 56's summary judgment standard.

Under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

4

Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). In the context of a motion to compel arbitration, that party must "demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause." Guidotti, 716 F.3d at 776 (quotations omitted). The non-moving party cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

In New Jersey, courts "have generally applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." Delta Funding Corp. v. Harris, 189 N.J. 28, 40, 912 A.2d 104 (2006). Procedural unconscionability has been held to "'include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'" Rodriguez v. Raymours Furniture Co., Inc., 225 N.J. 343, 366, 138 A.3d 528 (2016). Substantive unconscionability "simply suggests [that] the exchange of obligations [is] so one-sided as to shock the court's conscience." Delta Funding, 189 N.J. at 55 (quoting Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 565, 800 A.2d 915 (Super. Ct. 2002)).

5

One type of contract relevant to the instant matter, a contract of adhesion, "necessarily involves indicia of procedural unconscionability," Rodriguez, 225 N.J. at 367 (citing Delta Funding, 189 N.J. at 40). "A contract of adhesion is defined as one 'presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate.'" Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 301, 1 A.3d 678, 687 (2010) (quoting Rudbart, 127 N.J. at 353). Determining whether a contract of adhesion is in fact unconscionable "requires further analysis" based on several factors: "'[1] the subject matter of the contract, [2] the parties' relative bargaining positions, [3] the degree of economic compulsion motivating the 'adhering' party, and [4] the public interests affected by the contract.'" Id. (quoting Rudbart v. N. Jersey Dist. Water Supply Com, 127 N.J. 344, 356, 605 A.2d 681 (1992)).

In the present case, Acrow has plainly satisfied its initial burden on this motion to compel arbitration by pointing to the existence of the arbitration clauses. It is undisputed that such clauses exist and that the present matter falls within their ambit. Consequently, Plaintiffs must bring forth evidence showing that there exists a genuine dispute as to whether, as Plaintiffs contend, the arbitration clauses are unconscionable under New Jersey law.

Plaintiffs argue that the arbitration clauses are procedurally unconscionable for three reasons: (1) the clauses constitute contracts of adhesion; (2) at the time that each arbitration clause was executed, Osae-Kwapong did not seek assistance of legal counsel; and (3) during negotiations over the 2007 Agreement, Acrow's representative stated that arbitration before the ICC would be cheaper than litigation in U.S. courts. (Pl. Opp'n, at 16-18; Osae-Kwapong Decl., ¶ 8-9, 13.) Plaintiffs argue that the arbitration clauses are substantively unconscionable because

6

the costs of arbitrating this matter, excluding attorney's fees, would be "excessively burdensome" for Terra but "manageable for a large company like Acrow." (Pl. Opp'n at 19.)

None of these arguments is availing. In the first place, the record before the Court is bereft of any evidence showing that Acrow presented the arbitration clauses to Terra on a 'take-it-or-leave-it' basis. Plaintiffs' supporting declaration only indicates that Acrow "prepared" the 2004 and 2007 Agreements, including the arbitration clauses contained therein; that Acrow "presented" each agreement, including the clauses, to Osae-Kwapong; and that Osae-Kwapong "reviewed" and "executed" each of them. Osae-Kwapong Decl., ¶ 8-9. In other words, in the context of an ordinary arms-length transaction between two corporations, Acrow made an offer and Terra accepted. There is no evidence suggesting that Terra attempted to negotiate either arbitration clause with Acrow, only to find its efforts rebuffed, or that Acrow presented its offers to Terra with the caveat that negotiations over the arbitration clauses simply could not be had. For these reasons, the Court cannot find that the arbitration clauses in question constituted contracts of adhesion.

Second, the fact that Osae-Kwapong chose not to obtain legal counsel for Terra during negotiations with Acrow in 2004 and 2007 does not create the type of 'inadequacy' that would render the arbitration clauses procedurally unconscionable. Nor does the fact that, during negotiations in 2007, Acrow's representative stated that arbitration before the ICC would be cheaper than litigation in U.S. courts. For one thing, Plaintiffs have failed to show that Osae-Kwapong, the president of a company engaged in arranging multi-million dollar international sales, lacked the sophistication to discover on his own how much arbitration might cost and evaluate the risk that Terra might be unable to afford those costs in the future. In addition, Plaintiffs have come forward with no evidence showing that the statement purportedly made by

7

Acrow's representative regarding the potential costs of arbitration was false.  Indeed, considering the relative speed of arbitration in comparison to litigation in U.S. courts, as well as the cost of legal counsel in pursuing contractual claims in either forum, the total expense of prosecuting or defending a contractual claim through arbitration before the ICC may in fact be cheaper.  See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 280, 115 S. Ct. 834, 843 (1995) (referring to arbitration as "a less expensive alternative to litigation").

Third, there is no evidence from which this Court could reasonably conclude that, at the time the contracts were executed in 2004 and 2007, the arbitration agreements were so one-sided in favor of Acrow as to "shock" this Court's conscience.  The costs that Plaintiffs regard as "excessively burdensome" are fixed by Appendix III of the ICC Rules, which provides that they be calculated as a percentage of the amount in controversy for a particular dispute.  Based on Plaintiffs' claimed damages of $2.3 million, the ICC's total estimated administrative expenses and arbitrator's fees in this matter would be approximately $191,000.00, roughly 8.3% of the total damages sought by Terra.[1]  (See ICC Letter, at 1.)  Rule 36(2) of the ICC Rules requires that each party pay an equal share of these costs—although, as in the present case, the party requesting arbitration, i.e. Terra, may be required to pay a portion of its share first.[2]  Thus, in effect, each arbitration clause requires that Terra pay provisional arbitration costs equaling less than 4.2% of the unpaid commissions that it might seek.[3]  This Court does not find that, at the time the contracts were executed, such costs would be 'excessively burdensome' for Terra.  Because the arbitration clauses require that Acrow pay an equal share of those provisional fees, there is no other basis for concluding that the arbitration clauses favor Acrow.

---

[1] Plaintiff asserts, without citation to the record, that those costs may reach as high as approximately $315,000.00. This difference has no consequence on the Court's analysis.
[2] Terra has been required to pay a provisional advanced fee of $65,000.
[3] Ultimately, the arbitrators may require that Acrow bear all of Terra's arbitration costs.

Consequently, the Court finds that Plaintiffs have failed to come forward with evidence from which the Court might conclude that the arbitration clauses are procedurally or substantively unreasonable. As Plaintiffs have raised no other basis for their opposition to Acrow's motion to compel arbitration, summary judgment in favor of Acrow on the issue of arbitrability is warranted, and the Court will grant same.

**B.    Plaintiff's Request for the Appointment of a Substitute Arbitrator**

In the alternative, Plaintiffs request that the Court appoint a substitute arbitrator in ICC's place pursuant to Section 5 of the FAA, on grounds that the ICC is "unavailable."[4] (Pl. Opp'n, at 24.) As support for this request, Plaintiffs assert that the "exorbitant administrative fee has made the [ICC] unavailable." (Id.)

Section 5 of the FAA provides, in pertinent part:

> [i]f in the [arbitration] agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed; but if no method [for appointing an arbitrator] be provided . . . , or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . , as the case may require.

9. U.S.C. § 5. In other words, Section 5 authorizes the Court to appoint a substitute arbitrator, but only if there has been a "lapse in the naming of an arbitrator." Id. Otherwise, the "method of naming or appointing an arbitrator" set forth in an arbitration agreement "shall be followed." Id.

---

[4] The Court notes that Plaintiffs have not argued that the arbitration clauses are <u>unenforceable</u> because the ICC is unavailable for the purposes of 9 U.S.C. § 5 and because the clauses prevent the appointment of a substitute arbitrator. In <u>Khan v. Dell Inc., 669 F.3d 350 (3d Cir. 2012)</u>, cited by Plaintiffs, and several other recent cases, plaintiffs have opposed motions to compel arbitration on these grounds. In contrast, Plaintiffs in the present case do not dispute that the arbitration clauses at issue permit the appointment of a substitute arbitrator. They simply request that a substitute arbitrator be appointed. Specifically, Plaintiffs appear to request that this Court appoint a substitute arbitrator as a condition for granting Acrow's motion to compel arbitration. In any event, the Court will consider this request with Acrow's motion to compel arbitration.

9

Section 5 explicitly refers to two "lapse[s]" in the naming of an arbitrator: when an arbitration clause provides no method for selecting an arbitrator or arbitral tribunal; and when a party fails to or refuses to choose an arbitrator in accordance with the method provided.  The Third Circuit has held that a "lapse" also occurs when a designated arbitral forum is "unavailable," in the sense that it is legally "prevent[ed] from acting as an arbitrator" in the dispute.  Khan v. Dell Inc., 669 F.3d at 356-57.[5]  Additionally, courts in other circuits have held that a "lapse" occurs in several other circumstances: (1) when the entity designated as the arbitral forum simply does not conduct arbitrations, see Inetianbor v. CashCall, Inc., 768 F.3d 1346, 1354 (11th Cir. 2014) (finding that the Cheyenne River Sioux Tribe, which the parties had chosen as the arbitrator "did not involve itself in arbitration between private parties at all"); (2) when the entity designated refuses to arbitrate a dispute, Ferrini v. Cambece, No. 2:12-cv-01954, 2013 U.S. Dist. LEXIS 77976, at *6 (E.D. Cal. June 3, 2013); but see Moss v. First Premier Bank, 835 F.3d 260, 266 (2d Cir. 2016) (holding there is no lapse simply because "the forum declined to accept the case") (citing Gutfreund v. Weiner (In re Salomon Inc. S'holders' Derivative Litig.), 68 F.3d 554, 560 (2d Cir. 1995)); (3) when there is a deadlock between the parties in the naming of an arbitrator through the method provided, Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 814 F.2d 1324, 1328 (9th Cir. 1987); (4) when an arbitrator's death leaves a vacancy on the panel, Marine Prods. Export Corp. v. M.T. Globe Galaxy, 977 F.2d 66, 68 (2d Cir. 1992); (5) when the agreement's procedure for selecting an arbitrator is no longer in effect, Chattanooga Mailers Union v. Chattanooga News-Free Press Co., 524 F.2d 1305, 1315 (6th Cir. 1975); and (6) when the arbitrator chosen by the parties has a conflict of

---

[5] In Khan, the parties to a consumer dispute had selected the National Arbitration Forum (the "NAF") as their arbitral tribunal, but the NAF had previously entered into a consent judgment with the Attorney General of Minnesota which "barred [the NAF] from the business of arbitrating credit card and other consumer disputes."  Id. at 351-52.  The Third Circuit held that such legal bar "constitutes a 'lapse' within the meaning of Section 5."  Id. at 356-57.

interest, Erving v. Va. Squires Basketball Club, 468 F.2d 1064, 1067 n.2 (2d Cir. 1972).  In short, aside from the reasons set forth explicitly by Section 5, courts have generally held that a "lapse" in the naming of an arbitrator occurs (1) when a chosen arbitral forum is either unwilling or unable to arbitrate a dispute, or (2) when a "mechanical breakdown in the arbitrator selection process" occurs, Salomon, 68 F.3d at 560.

Plaintiffs' stated reason for seeking a substitute arbitrator—that the ICC charges what they characterize as an "exorbitant" administrative fee—clearly does not fall into any of above categories.  The Court finds no evidence that the ICC is unable or unwilling to arbitrate Terra's contractual claim.  For example, there is no evidence that the ICC is legally prevented from acting as an arbitrator.  To the contrary, the ICC initiated arbitration proceedings after Terra filed its request for arbitration.  Additionally, the ICC's charging of a particular fee does not constitute a 'mechanical breakdown,' so to speak, in the parties' process of selecting individuals to serve as arbitrators in accordance with ICC Rules.  There is no evidence that Acrow has failed to or refused to select an arbitrator, and there is no evidence that one of the arbitrators has vacated a position which must now be filled.  Consequently, this Court cannot conclude that a lapse in the naming of an arbitrator has occurred.  For that reason, the Court is not empowered to appoint a substitute arbitrator pursuant to Section 5.

### III.    CONCLUSION

Accordingly, for the foregoing reasons, Acrow's motion to dismiss Plaintiffs' action and compel arbitration, pursuant to Rule 12(b)(6) and Section 4 of the FAA, will be GRANTED.  Plaintiffs' request that a substitute arbitrator be appointed, pursuant to Section 5 of the FAA, will be DENIED.  An appropriate order shall issue.

          /s Stanley R. Chesler          
     STANLEY R. CHESLER

                                                           United States District Judge

Dated: February 7, 2017